IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLIE LEE GARNER, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | C.A. NO. C-06-218 |
| | § | |
| PAUL MORALES, et al., | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Willie Lee Garner complains that defendants improperly restricted his religious rights and took retaliatory actions against him. (D.E. 1). On December 11, 2006, defendants moved for summary judgment to dismiss plaintiff's claims on the grounds that he has failed to establish an Eighth Amendment violation of retaliation and that he has not shown a violation of his First Amendment right to exercise his religious freedom. (D.E. 34). Defendants also argue that plaintiff has not shown an Equal Protection violation, that he has not established a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), that defendants are entitled to Eleventh Amendment immunity, and that defendants are entitled to qualified immunity. Id. For the reasons stated herein, it is respectfully recommended that defendants' motion for summary judgment be granted.

# I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

# II.  BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Correctional Institutions Division ("TDCJ-CID"), and is currently incarcerated at the McConnell Unit in Beeville, Texas.  He complains of events that occurred at the McConnell Unit beginning on May 9, 2004, and continuing through February 2006.  Originally, he named as defendants forty-six TDCJ employees, in their individual and official capacities, in nine separate claims.  Following a June 14, 2006 Spears[1] hearing, plaintiff's claims against most of the defendants were dismissed.  (D.E. 27).

Plaintiff brought claims of retaliation against several defendants.  The Court retained his claims of retaliation against Lieutenant Juan Garcia, Sergeant Louis Rocha, and Officer Rachelle Ramon.  (D.E. 27, at 2).  The Court also retained some of plaintiff's claims that defendants denied him the right to practice Islam by

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

barring him from wearing his kufi[2] and by effectively forbidding him to wear his

quarter of an inch beard by repeatedly punishing him for not being clean shaven.

Specifically, he alleged sufficient facts to avoid summary dismissal against

defendants Lieutenant Garcia, Sergeant Rocha, Officer Ramon, and Commissary

Manager Gina Currie, and Commissary Coordinator Sylvia Villarreal on his

freedom of religion claims.  Id.; (D.E. 12, at 29-33).  On December 11, 2006,

defendants filed the instant motion for summary judgment.  (D.E. 34).  On

February 12, 2007, plaintiff filed a brief in opposition to defendants' motion.

(D.E. 41).

### III.  SUMMARY JUDGMENT EVIDENCE AND FACTS

In support of their motion for summary judgment, defendants offer the

following:

| | |
|---|---|
| Ex. A: | Plaintiff's TDCJ classification records; |
| Ex. B: | Relevant portions of the TDCJ Offender Handbook; |
| Ex. C: | Relevant portions of the TDCJ Health Services Division Policy Manual; |
| Ex. D: | Relevant portions of the TDCJ Chaplaincy Manual; |
| Ex. E: | TDCJ Administrative Directive, AD-03.83, regarding TDCJ |

---

[2] The TDCJ Chaplaincy Manual defines a kufi as a "white head covering for male [Muslim] offenders."  (D.E. 34-6, at 2).

offenders who refuse to comply with grooming standards;

Ex. F:      Plaintiff's disciplinary records from May 2004 through
            February 2006;

Ex. G:      Plaintiff's grievance records from May 2005 through February
            2006;

Ex. H:      TDCJ Administrative Directive, AD-07.30, regarding
            procedures for religious programming;

Ex. I:      Plaintiff's religious attendance records from May 2004 through
            February 2006; and

Ex. J:      Plaintiff's TDCJ Faith Record.

(D.E. 34) (attached exhibits).[3]  Defendants also submitted the affidavit of Omar

Shakir, a TDCJ Imam, (D.E. 35), and business record affidavits in support of their

motion for summary judgment.  (D.E. 38)  Finally, they submitted the affidavits of

Raynaldo Castro, Regional Director, Region IV of the TDCJ-CID, (D.E. 45-2), and

William Burgin, the Practice Manager for the Medical Department at the

McConnell Unit.  (D.E. 45-3).

Plaintiff's TDCJ Faith Record reveals that he has been an adherent of the

Islamic faith since at least December 1999.  DX-J, at 3.  During the time of the

events about which he complains, he attended religious services regularly,

---

[3] Reference to defendants' exhibits are to "DX" followed by the appropriate letter and
page number.

including Jumah, Taleem and Koranic studies, and observance of Holy Days and feasts such as Ramadan.  DX-I.  In 2004, he began refusing to comply with TDCJ grooming policies, which require that all prisoners be clean shaven unless an objective medical evaluation establishes a medical reason exists for a prisoner not to shave with a razor.  In such cases, the prisoner is issued a clipper shave pass exempting him from using a razor blade to shave.  DX-B, at 3; DX-C, at 5.  Plaintiff does not disagree that TDCJ policy prohibits facial hair, and agrees that he does not have a clipper shave pass, but instead argues that "TDCJ's inflexible grooming policy" should yield to his religious beliefs, and that in enforcing the policy, prison officials have retaliated against him.  (D.E. 41, at 4-5).

## A.    Plaintiff's Disciplinary History.

Plaintiff was cited with eight disciplinary infractions in 2004.  DX-F, at 12-21.  Of these infractions, two involved defendants in this action.  Id. at 16-17, 21.  On June 26, 2004, plaintiff was cited with a major disciplinary action for falsely stating he was on the clipper shave list.  Id. at 16.  Defendant Garcia testified as a witness at his disciplinary hearing, and Defendant Rocha prepared the preliminary investigation report regarding the offense.  Id. at 17.  As a result of this disciplinary case, plaintiff lost thirty days of recreation and seventy days of commissary privileges.  Id. at 16.

5

On December 14, 2004, he was cited with a disciplinary infraction for failure to obey an order.  Id. at 21.  Defendant Garcia was the hearing officer at his disciplinary hearing.  Id.  As a result of this disciplinary case, plaintiff lost thirty days of recreation and commissary privileges.  Id.

Plaintiff was also cited with two disciplinary cases in 2005, one of which involved a defendant in this action.  DX-F, at 24.  On December 20, 2005, he was charged with being out of place without authorization for helping a secured status inmate clean the pod.  Id.  Defendant Rocha was the investigating officer who prepared the preliminary report for the action.  Id.

In the first two months of 2006, plaintiff was cited with four disciplinary cases.  DX-F, at 25-31.  Defendants who have been retained in this case were involved in three of the 2006 disciplinary cases.  Id.  On January 15, 2006, Defendant Rocha prepared a preliminary investigation report after plaintiff refused to comply with TDCJ grooming standards.  Id. at 25-26.  He prepared a similar report on January 16, 2006 because of plaintiff's continuing refusal to groom according to TDCJ policy.  Id. at 28.  In disciplinary case number 20060132966, plaintiff lost thirty days of recreation and commissary privileges.  Id. at 27.

On February 25, 2006, Defendant Rocha again prepared a preliminary investigation report because plaintiff was refusing to shave.  Id. at 31.  For the

6

February 25, 2006 offense, Defendant Ramon was the charging officer.  Id. at 30.

In disciplinary case number 20060176051, plaintiff lost forty days of recreation

and twenty-seven days of commissary privileges.  Id.

## B.      Plaintiff's Grievance History.

In 2004, plaintiff filed two sets of grievances involving defendants in this

case.  On July 19, 2004, he filed a Step One grievance in which he challenged the

outcome of disciplinary case number 20040304342, which was the 2004

disciplinary action for his failure to comply with TDCJ grooming standards.

DX-G at 32-33.  Defendant Garcia testified as a witness at this disciplinary

hearing.  DX-F, at 16.  On August 20, 2004, his grievance was denied because

"[n]o procedural errors were noted and the punishment was well within established

guidelines.  No valid reason was found to warrant dismissing this disciplinary

case."  DX-G, at 33.  It was also noted that plaintiff "did not refute the charge" of

failure to properly groom.  Id.  In his Step One grievance, as well as in a successive

Step Two grievance challenging the same disciplinary case, plaintiff contended

that Muslim offenders could keep a beard.  Id. at 32, 35.  Both grievances reference

actions by Defendants Garcia and Rocha.  Id.

On December 28, 2004, plaintiff submitted a Step One grievance

challenging disciplinary case number 20050109071.  DX-G, at 36-37.  He

challenged Defendant Garcia's impartiality as the hearing officer at the disciplinary hearing.  <u>Id.</u>  On January 25, 2005, his grievance was denied because "[n]o credible reason was found to warrant dismissing this case" because the hearing officer heard the case in a fair and unbiased manner and the evidence used to support the case was sufficient to uphold the verdict.  <u>Id.</u> at 37.  On January 29, 2005, he filed a Step Two grievance challenging the same events.  <u>Id.</u> at 38.  On February 9, 2005, his points of appeal were found to be without merit.  <u>Id.</u> at 39.

In 2005, plaintiff filed two of the sets of grievances involving defendants. On June 30, 2005, he filed a Step One grievance challenging disciplinary case number 2005189857.  DX-G at 40.  In this grievance, he alleged that Defendant Ramon had threatened him.  <u>Id.</u>  On August 11, 2005, his grievance was denied because there was not "sufficient evidence to support [his] allegations against Officer Ramon."  <u>Id.</u> at 41.  On August 21, 2005, he filed a Step Two grievance challenging the denial of his June 30, 2005 grievance.  <u>Id.</u> at 42.  On September 21, 2005, the grievance was dismissed.  <u>Id.</u> at 43.

In September 2005, plaintiff filed a set of grievances that did not involve any of the remaining defendants in this case, but nevertheless, involved the issues at hand.  DX-G, at 44.  In his September 2005 Step One grievance, he challenged TDCJ's policy regarding the kufi.  <u>Id.</u>  TDCJ allows prisoners to possess certain

8

religious items, including allowing Muslim inmates to possess one prayer rug, one kufi, one set of dikr prayer beads, and one religious medallion.  DX-D, at 6.  They are allowed to wear the kufi and use their religious materials "in designated areas, their cells or dormitory cubicle and/or at established religious services."  Id.  They are allowed to wear the religious medallion throughout the day, but not the kufi. Id.  Plaintiff challenged this policy after he was cited with a disciplinary case for failing to remove his kufi while entering the dining hall.  DX-G, at 44-47.

On November 16, 2005, plaintiff filed a Step One grievance challenging, in part, the actions of Defendants Currie and Villarreal, who refused to take his identification photo because he was not clean shaven as required by TDCJ policy. Id. at 48-49.  He again argued that Muslims are allowed to wear a beard in prison. Id.  On February 3, 2006, a response was issued, stating in part that "the chaplaincy department has provided this office with documentation stating it does not authorize exceptions to the grooming standards from agency policy."  Id. at 49.  On February 9, 2006, plaintiff again challenged TDCJ's grooming policy in a Step Two grievance.  Id. at 50-51.  He received a detailed response, which stated in part that the "TDCJ-ID grooming policy standards are to be enforced with no exemption based on religious beliefs.  The courts have determined that the statewide TDCJ hair policy ... is constitutionally appropriate."  Id. at 51.

9

In 2006, plaintiff filed two sets of grievances relevant to this case.  DX-G, at

52-60.  On January 8, 2006, he filed a Step One grievance claiming that Defendant

Ramon instructed another officer to file a disciplinary case against him for

claiming that he was a secured status inmate.  Id. at 52.  The response to his

grievance found that the officers actions were in accord with TDCJ policy.  Id. at

53.  In the Step Two grievance he filed next, he alleged that the officers conspired

to retaliate against him.  Id. at 54.  No action was taken on his complaint.  Id. at 55.

On January 21, 2006, plaintiff filed a Step One grievance that, in part,

challenged actions by Defendant Rocha.  Id. at 57.  He alleged that Defendant

Rocha and others were retaliating against him for his refusal to shave because of

his religious beliefs.  Id.  On February 15, 2006, he received a response, which

stated that an exception to the grooming policy would not be made to

accommodate his religious beliefs.  Id. at 58.  He filed a Step Two grievance

regarding this denial on March 3, 2006, but no further action was taken regarding

his complaints.  Id. at 59-60.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Id.</u> at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence, or evaluate the credibility of witnesses.  <u>Id.</u>

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." Id. at 248.

## V.  DISCUSSION

**A.      Plaintiff Cannot Sue Defendants in Their Official Capacities.**

Plaintiff has sued defendants in their official and individual capacities

seeking compensatory and punitive damages.  (D.E. 1, at 39-40).

A suit against a prison employee in his official capacity is the same as a suit

against the entity the employee represents.  Kentucky v. Graham, 473 U.S. 159,

166 (1985).  The Eleventh Amendment bars a suit for money damages against a

state or state agency.  See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54

(1996); Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004); Pendergrass v.

Greater New Orleans Expressway Comm'n, 144 F.3d 342, 343-44 (5th Cir. 1998).

A judgment may not be entered against a state officer in his official capacity for

violating federal law in the past.  See Puerto Rico Aqueduct & Sewer Auth. v.

Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing defendants in their official capacities for

money damages, those claims are barred by the Eleventh Amendment.  As such,

defendants are entitled to summary judgment in their favor on those claims, and it

is respectfully recommended that those claims be dismissed with prejudice.

**B.     Plaintiff Fails to Establish a First Amendment Violation of His Religious Exercise Rights.**

Plaintiff claims that defendants have denied him the right to practice his Islamic faith by not allowing him to wear his kufi and by effectively forbidding him to wear his quarter of an inch beard by repeatedly punishing him for not being clean shaven.  (D.E. 1, 41).

Prison administrators must provide inmates with "reasonable opportunities ... to exercise the religious freedoms guaranteed by the First and Fourteenth Amendments."  Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).  Restrictions on that exercise must be reasonably related to legitimate penological interests.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 345-46 (1987); Turner v. Safley, 482 U.S. 78, 89-90 (1987).

In Turner, the Supreme Court established a four-factor "rational relationship" test of analyzing the constitutionality of regulations that burden a prisoner's fundamental rights.  482 U.S. at 89-91.  Under the Turner test, the court must consider: (1) whether there exists a valid, rational correlation between the prison regulation and the legitimate governmental interest advanced; (2) whether there are alternative means of exercising the rights that remain available to the inmates; (3) what is the impact on prison staff, other inmates, and the allocation of prison resources generally; and (4) whether there is an absence of ready

alternatives to the regulation in question.  Id.

### 1.    TDCJ's Grooming Policy.

Plaintiff cites to two district court cases in support of his argument that TDCJ's grooming policy violates his religious rights.  (D.E. 41, at 8).  In Luckette v. Lewis, the United States District Court for the District of Arizona held that a prison policy that prohibited a prisoner from wearing a quarter of an inch beard in accordance with his religious beliefs violated the prisoner's free exercise rights. 883 F. Supp. 471, 481 (D. Ariz. 1995).  In Mayweathers v. Terhune, the United States District Court for the Eastern District of California held that grooming policies that required prisoners to shave their beards violated RLUIPA.  328 F. Supp.2d 1086, 1095 (E.D. Cal. 2004).

However, the Fifth Circuit has held that requiring Muslim prisoners to be clean shaven does not violate their free exercise rights.  Green v. Polunsky, 229 F.3d 486, 490-91 (5th Cir. 2000); accord Taylor v. Johnson, 257 F.3d 470, 472 (5th Cir. 2001) (per curiam) (citing Green); see also Hicks v. Garner, 69 F.3d 22, 25 (5th Cir. 1995) (holding that regulations requiring Rastafari offender to cut his hair and beard did not violate inmate's free exercise rights).  The Green court addressed the question of whether Muslim prisoners should be allowed to wear a beard using Turner's four-factor "rational relationship" test:

[T]his grooming policy meets the requirements set forth by the Supreme Court in *Turner* and *O'Lone*. First, the policy is neutral, affecting all inmates, regardless of their religious beliefs. The neutral and universal application of a policy requiring short hair and clean-shaven faces serves the state's penological interests in a number of ways. Beards of any length can change one's appearance, and thus would be detrimental to the prison's interest in identifying prisoners internally as well as in the event of escape. Beards and hairstyle are also used by inmates to signal gang affiliations. Thus, the TDCJ has a legitimate interest generally in preventing inmates from wearing even short beards....

[A] deeper analysis demonstrates the impracticability of a religious exception. The number of inmates warranting a medical exemption to the grooming policy is quite small, but the number of inmates likely to seek qualification for a religious exception would be much greater. In addition, such a policy would place prison administrators in the untenable position of trying to determine which asserted religious beliefs, and even which professed religions, are legitimate.

Although the TDCJ grooming policy may not be the least restrictive policy available to achieve the prison's interests, that is not what is required here. So long as the penological interests at stake could not be achieved without depriving prisoners of their rights, the policy's infringement on those rights must be abided. That is clearly the case here. Any alternatives would impose significant costs on the prison system and would likely increase the dangers that prison guards and inmates already face. Neither does the TDCJ grooming policy deprive Muslim inmates of "all means of expression" of their religious beliefs. It merely removes or reduces one of many avenues by which they may manifest their faith.

229 F.3d at 490-91 (internal citations omitted).

Plaintiff now challenges the same TDCJ grooming policy that the Fifth

Circuit addressed in Green and Taylor.  The Fifth Circuit has established that the

policy satisfies the standards set out by the Supreme Court.

Thus, it is respectfully recommended that his claim that the TDCJ policy

requiring that he be clean shaven violates his religious free exercise rights is

without merit and should be dismissed with prejudice.

### 2.     The Kufi Cap.

Plaintiff also challenges TDCJ's restrictions on the times when he is allowed

to wear his kufi, or religious cap.  He was disciplined for failing to remove his kufi,

and he appealed his disciplinary conviction by filing grievances.  DX-G, at 44-47.

Warden Jackson responded that no action would be taken because he was

instructed to wear his kufi only to services and not in the hallway.  Id. at 45.  TDCJ

allows offenders to wear a kufi "in designated areas, their cells or dormitory

cubicle and/or at established religious services."  DX-D, at 6.

The Fifth Circuit has also previously addressed TDCJ's policy that permits

offenders to wear the kufi only at limited times pursuant to the standard set forth

by the Supreme Court in Turner.  See Muhammad v. Lynaugh, 966 F.2d 901, 902-

903 (5th Cir. 1992).  The Fifth Circuit determined "that the regulations restricting

16

the use of Kufi caps and religious insignia bear a reasonable relationship to the legitimate penological interest of prison security." Id. at 902.  The Muhammad court found that TDCJ's policy of allowing inmates to wear the kufi at limited times "provided an opportunity for the exercise of religious freedoms as guaranteed by the Constitution.  Allowing inmates to wear these religious articles in other areas conceivably could undermine the TDCJ's legitimate penological interests, primarily its overriding concern for prison security." Id. at 903.

Plaintiff has failed to present any evidence that TDCJ's policy regarding the use of the kufi does not provide him an opportunity for the exercise of his religious freedoms as guaranteed by the Constitution.  Defendants have presented ample evidence that TDCJ's policy advances legitimate penological interests, and that altering the policy could place staff and inmates in danger:

> Prison gangs have a long history of trying to use religion
> as cover for their gang activities.  The existence of a
> religious exception would further encourage this.  Gangs
> are forever trying to secretly identify themselves to each
> other and to other offenders.  Head coverings would be
> an ideal conduit for such identification....  [In addition,]
> weapons and other contraband can be hidden underneath
> or within head coverings and in facial hair.

(D.E. 45-2, at 5-6) (Castro Aff.).  While plaintiff retains alternative means to practice his religion, there is no readily available alternative for prison officials to use that would allow prisoners to wear a kufi at will while maintaining security for

17

prisoners and staff.

It is respectfully recommended that plaintiff's claim that the TDCJ policy allowing him to wear his kufi only at designated times and places violates his free exercise rights should be dismissed with prejudice.

## C.     Plaintiff Fails to State a Fourteenth Amendment Equal Protection Violation.

Plaintiff alleges that TDCJ's grooming policy violates the Equal Protection Clause.  (D.E. 41, at 5).  The Supreme Court has held that "[t]he Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" Plyler v. Doe, 457 U.S. 202, 216 (1982) (citation omitted).  However, things that are different in fact or opinion do not have to be treated as if there were no difference.  Id. (citation omitted).

To succeed in an equal protection challenge, plaintiff must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated.  McCleskey v. Kemp, 481 U.S. 279, 292 (1987) (citations omitted).  The Fifth Circuit has determined that "discriminatory purpose" implies that a particular course of action was selected "at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."  Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995) (per curiam) (citation omitted).  A plaintiff must prove specific acts that support a claim of discrimination, and his personal belief

that discrimination played a part in the situation is insufficient to prove an equal

protection violation.  See id.

In addressing a similar equal protection claim, the Fifth Circuit explained

that "[t]o maintain his equal protection claim independently of his free exercise

claim, [a plaintiff] must allege and prove that he received treatment different from

that received by similarly situated individuals and that the unequal treatment

stemmed from a discriminatory intent."  Taylor, 257 F.3d at 473 (citing City of

Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985)).  Like the plaintiff

in Taylor, here plaintiff also "contends that the failure to grant him the same

accommodation as those with medical conditions fails strict scrutiny and lacks a

rational relationship to a legitimate government interest."  Taylor, 257 F.3d at 473;

(D.E. 41, at 5-6); (D.E. 46, at 2-3).  Before remanding the claim for further factual

development, the Fifth Circuit explained:

> Even assuming, *arguendo*, that the right to grow a beard
> is a fundamental free exercise right, we temper our
> application of strict scrutiny in the prison context.
> Although convicted prisoners do not forfeit all
> constitutional protections, we must balance those
> protections against the fact that lawful incarceration
> necessarily requires the limitation of many rights and
> privileges and against the legitimate penological
> objectives of the prison.

Taylor, 257 F.3d at 473 (citing Thornburgh v. Abbott, 490 U.S. 409 (1989);

O'Lone v. Shabazz, 482 U.S. 342, 348-49 (1987)); see also Gooden v. Crain, 405 F. Supp.2d 714, 722-23 (E.D. Tex. 2005) (holding that TDCJ grooming policy as applied to Muslim inmates did not violate equal protection).  The Taylor court did note, however, that "'[d]iscriminatory enforcement of facially neutral grooming regulations may, under some circumstances, violate the Equal Protection Clause.'" 257 F.3d at 474 (citations omitted).

TDCJ's grooming policy applies to all inmates.  DX-B, at 3.  Clipper shave passes are only issued when medically indicated.  DX-C, at 5.  Furthermore, Imam Shakir testified that "TDCJ provides for the fundamental needs of Muslim inmates."  (D.E. 35, at 2) (Shakir Aff.).  Plaintiff has alleged no facts that would indicate that TDCJ applies its policy differently among Muslims, or differently among inmates of different faiths, and the Fifth Circuit has already indicated that requiring prisoners to be clean shaven serves a legitimate penological interest. Green, 229 F.3d at 491.  TDCJ's grooming policy applies to inmates of all religions, which includes inmates of other religions that require members to grow facial hair.  See, e.g., Hicks, 69 F.3d at 25 (finding that prison grooming regulations that required Rastafari inmate to refrain from having a beard did not violate inmate's free exercise rights).  The only exception TDCJ makes to its beard grooming policy is for inmates with an objectively verifiable medical condition.

Plaintiff has not shown that TDCJ uses discriminatory enforcement of its facially

neutral grooming regulations, but instead argues that allowing a medical exception

and not a religious exception violates the Equal Protection Clause

TDCJ's grooming policy only allows inmates with a medical condition to

wear a quarter of an inch beard, and such offenders:

> ... are not really being excused from [TDCJ's] strict
> grooming standard.  They are not allowed to grow a
> beard any way they want, but only according to the pass.
> The pass allows a quarter-inch beard only on problem
> areas of the face.  Offenders with a clipper shave pass
> must follow a slightly different strict facial hair policy,
> governed by the medical pass.  Other offenders will not
> perceive that offenders with a clipper shave pass are
> receiving special treatment, so long as the pass is given
> only for legitimate, objectively-determinable medical
> reasons.

(D.E. 45-2, at 5) (Castro Aff.).  The evidence presented does not demonstrate that

TDCJ's grooming policy was adopted to discriminate against Muslim or other

religious prisoners, but instead that it was adopted to care for the needs of a select

group of inmates.  The Supreme Court has noted that prison regulations that make

distinctions withstand an equal protection challenge if they have a "rational basis

in the legitimate penological interests of the prisons."  Thornburgh, 490 U.S. at 415

n.13 (citations omitted); accord Turner, 482 U.S. at 89; Freeman v. Tex. Dep't of

Crim. Justice, 369 F.3d 854, 860 (5th Cir. 2004).  The Fifth Circuit has noted that

grooming regulations serve a legitimate penological interest.  Green, 229 F.3d at

491.  There is no evidence of discriminatory intent behind TDCJ's grooming

policy, and the policy is enforced evenly among all inmates without regard to

religion.

It is respectfully recommended that plaintiff's claim that TDCJ's grooming

policy violates the Equal Protection Clause of the Fourteenth Amendment is

without merit and should be dismissed with prejudice.

**D.     Plaintiff Fails to State a Violation of RLUIPA.**

Plaintiff also asserts his right to practice his religion pursuant to the

RLUIPA, 42 U.S.C. § 2000cc-1(a).  RLUIPA provides that no government shall

impose a substantial burden on the religious exercise of a person residing in or

confined to an institution even if the burden results from a rule of general

applicability, unless the government demonstrates that the imposition of the burden

on that person is in furtherance of a compelling governmental interest and is the

least restrictive means of furthering that compelling interest.  Id.  RLUIPA imposes

the strict scrutiny test on prison regulations; however, the courts are to apply that

standard with "due deference to the experience and expertise of prison and jail

administrators in establishing necessary regulations and procedures to maintain

good order, security and discipline, consistent with consideration of costs and

limited resources."  Cutter v. Wilkinson, 544 U.S. 709, 723 (2005) (citation omitted).

In Cutter, the Supreme Court specifically noted that "[l]awmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions."  Id. (citation omitted); see also id. at 722 (RLUIPA will be applied "in an appropriately balanced way, with particular sensitivity to security concerns.").  The Court further explained that, while RLUIPA adopts a compelling governmental interest standard, "'context matters' in the application of that standard."  Id. at 723 (citing Grutter v. Bollinger, 539 U.S. 306, 327 (2003)).  Prison security, in and of itself, is a compelling state interest, and deference is due to institutional officials' expertise in this area.  Id. at 725 n.13.  RLUIPA does not elevate accommodation of religious observances over a prison's need to maintain order and safety, and any accommodation must be measured so that it does not override other significant interests.  Id. at 722.  A prison is free to resist requests for religious accommodations that either impose unjustified burdens on other prisoners, or jeopardize the effective functioning of a prison.  Id. at 726.

Plaintiff has the burden of showing that the governmental practice complained of imposes a "substantial burden" on his religious exercise.  Adkins v. Kaspar, 393 F.3d 559, 567 (5th Cir. 2004).  This requires the Court to address

23

whether: the burdened activity is a "religious exercise," and if so whether the burden is "substantial." Id. A "religious exercise" includes "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" Id. (quoting 42 U.S.C. § 2000cc-5(7)). The Fifth Circuit has held that "a government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." Id. at 570.

Plaintiff is permitted to practice his religion. He attends services and possesses religious materials. DX-I. Nonetheless, he contends that he is not able to fully exercise his religious beliefs if he must be clean shaven and may only wear his kufi at designated times and places. Plaintiff contends that growing a beard and wearing a kufi are religious exercises, and defendants do not dispute that these practices are religious exercises. See (D.E. 35, at 1). Therefore, this Court must determine whether TDCJ has placed a substantial burden on plaintiff's religious exercises. See Adkins, 393 F.3d at 567.

Defendants submitted the affidavit of Imam Shakir in support of their argument that TDCJ policies do not substantially burden plaintiff's religious exercises. In concluding that such policies do not substantially burden the practice of the Muslim religion, Imam Shakir testified:

The Quran does not mandate the wearing of a beard.  There are examples of Mohammed wearing a beard, but he distinguished between Mohammed's religious practices and his cultural practices.  Wearing a beard does not make a person righteous.  Although I, personally, have chosen to wear a beard, it is not required.  Islam focuses on the inner man, not the outward appearance.  Wearing a quarter inch bead [sic] is a personal practice, not a religious mandate.  The same argument and reasoning can be made for wearing a kufi.  However, it should be understood that Muslim scholars have differing opinions as to whether wearing a beard and/or kufi is required.

TDCJ provides for the fundamental needs of Muslim inmates, particularly prayer services.  They are allowed to possess religious books, a prayer rug, a kufi, one set of dikr prayer beads and one religious medallion. They are allowed to attend Jumah prayer services, participate in Taleem (Quranic study sessions) and participate in Ramadan activities.  They are allowed to wear their kufi in designated areas, the cells or dormitory cubicles, religious services and meetings, and while walking to and from Jumah services and Taleem meetings.  They are also allowed to shower and clean before prayer services.  In light of the foregoing, it is my opinion that the TDCJ policy requiring inmates be clean shaven and to wear their kufi in designated areas does not substantially burden the practice of the Muslim religion.

(D.E. 35, at 2-3) (Shakir Aff.).  In response to Imam Shakir's affidavit, plaintiff

asserts that the grooming policy is a substantial burden on him because he will be

punished for refusing to shave "in an effort to compel him to acquiesce [with] the

grooming policy in contravention of his religious beliefs."  (D.E. 46, at 1).

Imam Shakir admits that some Muslim scholars believe that a beard or a kufi is required for the practice of Islam.  This Court is forbidden from determining whether the challenged practices are central to the adherent's religion.  Adkins, 393 F.3d at 570.  Thus, while Imam Shakir claims that Muslim offenders have numerous opportunities to practice their religion and the restrictions TDCJ places on Muslim offenders do not substantially curtail the practice of their religion, plaintiff asserts that both are integral to his faith.

Nevertheless, assuming that TDCJ's policies place a substantial burden on plaintiff's free exercise of his religious rights, it is necessary to address whether the policy is the least restrictive means of furthering a compelling governmental interest.  Baranowski v. Hart, 486 F.3d 112, 125 (5th Cir. 2007).  Courts that have upheld similar grooming policies to challenges pursuant to RLUIPA.  See Gooden, 405 F. Supp.2d at 720-22 (holding that TDCJ grooming policy as applied to Muslim inmates did not violate RLUIPA); Daker v. Wetherington, 469 F. Supp.2d 1231, 1239-40 (N.D. Ga. 2007) (Georgia Department of Corrections grooming policy requiring Muslim inmates to be clean-shaven did not violate RLUIPA); but see Mayweathers, 328 F. Supp.2d at 1095.  Moreover, prison security is a compelling state interest.  Cutter, 544 U.S. at 724 n.13.

In addition, the Fifth Circuit has noted that the standards under RLUIPA are

26

nearly the same as the standards of the Religious Freedom Restoration Act

("RFRA").  Thompson v. Scott, 86 Fed. Appx. 17, 19 (5th Cir. Jan. 9, 2004) (per

curiam) (unpublished).  In addressing a RFRA claim, the Fifth Circuit has held that

the grooming policy furthers the compelling governmental interest of prison

security.  Diaz v. Collins, 114 F.3d 69, 73 (5th Cir. 1997).

Defendants have presented evidence that security concerns underlie TDCJ's

policies:

> There are many overlapping reasons [for the]
> grooming and clothing policies, and specifically for the
> clean-shaven and no head covering policies.  The most
> fundamental reason is to provide a safe, appropriate
> confinement and to ensure public safety.  Prison is
> inherently a tightly-controlled environment because
> control is vital to safety and security.  One of the many
> aspects of security and safety in prison is requiring a
> uniform appearance among offenders.  Offenders all wear
> the same clothes and have nearly the same hairstyle.
>
> One way the grooming and clothing policies make
> the prison more secure is that it assists in identification of
> offenders.  If offenders were allowed to wear head
> coverings and to grow facial hair and other hair at their
> discretion, they could quickly change their appearance by
> changing their head covering or hairstyle.  For instance,
> when the seven offenders who escaped the Connally Unit
> were captured, they had radically changed their
> appearance, mostly by growing and coloring their hair
> and facial hair.
>
> Both offenders and correctional officers often
> rotate through different prisons and their assignments

withing [sic] the same prison often change.  Therefore,
offenders are identified by a photo identification card that
they must carry at all times.  It is important that offenders
not be able to change their appearance from their picture
on their identification card, and requiring a uniform
grooming policy makes this much more difficult.

Offenders can also use their head coverings, hair
styles, and facial hair styles to identify themselves as
gang members and otherwise to communicate
clandestinely among themselves.  This would be a huge
danger within the prison.

Another security reason is the possibility that
weapons and other contraband can be hidden underneath
or within head coverings and in facial hair.  This is a
well-known problem with respect to long hair and beards.
This danger may seem small in the case of a quarter-inch
beard, but offenders have been known to hide weapons
and contraband in exceedingly clever ways.

(D.E. 45-2, at 4-5) (Castro Aff.).  Plaintiff argues that there is no record of any

inmate who has escaped with the assistance of a quarter of an inch beard.  (D.E. 46,

at 2).  He further argues that there is no record of anyone hiding weapons in a kufi.

Id.

Although prison officials are expected to use the least restrictive means to

further a compelling governmental interest, the Fifth Circuit has noted that

"RLUIPA ... is not meant to elevate accommodation of religious observances over

the institutional need to maintain good order, security, and discipline or to control

costs."  Baranowski, 486 F.3d at 125 (citation omitted).  Defendants have also

28

presented evidence that in addition to security problems, changing TDCJ's policies would substantially increase costs to TDCJ, which already faces employee shortages and limited funding. (D.E. 45-2, at 6) (Castro Aff.).

Despite the incidental effects of TDCJ's policies on plaintiff's religious practices, the security interests and budgetary interests at stake could not be served by less restrictive means, and the Court must give deference to prison officials in this area. Thus, it is respectfully recommended that plaintiff's claim that TDCJ's grooming and head covering policies violate RLUIPA is without merit and should be dismissed with prejudice.

**E.    Plaintiff Fails to Establish an Eighth Amendment Violation of Retaliation by Defendants.**

To prevail on a claim of retaliation, an inmate must establish four elements: "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). The inmate must be able to point to a specific constitutional right that has been violated. Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam). The inmate must allege more than his personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). Conclusory allegations of retaliation are insufficient. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

"The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." Id. (citation omitted). Causation requires an inmate to show that, but for the retaliatory motive, the adverse action would not have occurred. McDonald, 132 F.3d at 231.

The Fifth Circuit has held that an inmate's retaliation claim must allege more than a *de minimis* adverse act. Morris v. Powell, 449 F.3d 682, 684-85 (5th Cir. 2006). In Morris, the plaintiff alleged that he had been assigned to a less desirable job in the kitchen, from pot scrubber to butcher, in retaliation for filing complaints about a commissary official. Id. at 683-84. The Fifth Circuit concluded that in Morris' case, even if the job transfers were motivated by retaliation and he suffered a few days discomfort, there was no evidence that the job transfers were more than *de minimis*. Id. at 687.

Although the guilty finding as to the three disciplinary cases is "probative and potent" evidence that plaintiff committed the infraction, it is not an "absolute bar" to plaintiff's retaliation claim. Woods, 60 F.3d at 1166. Plaintiff's loss of commissary and recreation privileges establish a retaliatory adverse act. See Hart v. Hairston, 343 F.3d 762, 764 (5th Cir. 2003) (per curiam) ("27 days of commissary and cell restrictions that directly resulted constituted an 'adverse

30

act.'"").

### 1.    Defendant Garcia.

Plaintiff alleges that despite his clipper shave pass, Lieutenant Garcia repeatedly gave him disciplinary cases for failure to groom or other seemingly small violations that escalated into major cases with significant punishments.

The evidence presented establishes that plaintiff has never been issued a clipper shave pass during his incarceration.  (D.E. 45-3, at 3) (Burgin Aff.). Plaintiff has not provided this Court with a copy of his clipper shave pass to demonstrate that he received one.  Similarly, he has not provided any documents to establish that his name is included on a clipper shave list.  Indeed, TDCJ only issues clipper shave passes for medical reasons.  DX-C, at 5.  Furthermore, plaintiff testified at his Spears hearing that a TDCJ Administrative Directive permits Muslim inmates to wear a quarter of an inch beard.  (D.E. 12, at 32). However, he has failed to provide documentation of this Administrative Directive.

TDCJ inmates who refuse to comply with the grooming standards are subject to penalties, such as cell restriction, in accordance with the *TDCJ Disciplinary Rules and Procedures for Offenders*.  DX-E, at 8-9.  Furthermore, plaintiff has failed to show that defendants have violated his free exercise rights or the Equal Protection Clause.

In 2004, Defendant Garcia testified as a witness at one of plaintiff's disciplinary hearings, and was the hearing officer at another.  DX-F, at 17, 21. Plaintiff filed a grievance that challenged the outcome of the disciplinary hearing at which Defendant Garcia testified.  DX-G, at 32-33.  He also challenged the impartiality of Defendant Garcia's actions as the hearing officer.  Id. at 36-37.

In disciplinary case number 20040304342, for which Defendant Garcia testified as a witness, plaintiff was disciplined for telling officers that he was on the clipper shave list when he was not on the list.  DX-F, at 16.  In his Step One grievance challenging the outcome of the disciplinary action, he asserted that Defendant Garcia lied, but he does not say what lie he told.  DX-G, at 32.  Plaintiff filed a set of grievances challenging Defendant Garcia's impartiality as a hearing officer at a subsequent disciplinary hearing.  DX-G, at 36-39.  The responses to the grievances indicate that plaintiff failed to establish that Defendant Garcia failed to be impartial.  Id. at 37, 39.

Defendant Garcia was not involved in any of the 2005 or 2006 disciplinary cases assessed against plaintiff, nor was he the subject of any of plaintiff's grievances in 2005 or 2006.

Plaintiff has failed to state anything more than a conclusory allegation that Defendant Garcia retaliated against him for his religious beliefs.  See Johnson, 110

F.3d at 310.  It cannot plausibly be inferred from Defendant Garcia's limited

involvement in plaintiff's disciplinary actions that he intended to retaliate against

him.  Woods, 60 F.3d at 1166 (no "chronology of events" established).  Plaintiff

has failed to present any evidence that Defendant Garcia intended to retaliate

against him.  He has also failed to show that Defendant Garcia violated any of his

constitutional rights.

It is respectfully recommended that plaintiff's claim of retaliation against

Defendant Garcia should be dismissed with prejudice.

### 2. Defendant Rocha.

Plaintiff alleges that despite his clipper shave pass, Sergeant Rocha

repeatedly gave him disciplinary cases for failure to groom or other seemingly

small violations that escalated into major cases with significant punishments.

Plaintiff has never been issued a clipper shave pass for medical reasons, and

such passes are not issued for religious reasons.  (D.E. 45-3, at 3) (Burgin Aff.).  In

2004, Defendant Rocha was the investigating officer for disciplinary case number

20040304342, which was a case in which plaintiff was disciplined for telling

officers that he was on the clipper shave list when he was not.  DX-F, at 23-24.  In

plaintiff's Step Two grievance challenging the disciplinary case, he alleged that

Defendant Rocha instructed the charging officer to write the disciplinary action

against him.  DX-G, at 34.  Plaintiff asserted that he was on the clipper shave list,
and that Defendant Rocha instructed another officer to write the case against him
because he was angry at plaintiff for attempting to exercise his religious beliefs.
Id.  In the response to plaintiff's grievance, he was informed that TDCJ grooming
standards were to be enforced without exception for his religious beliefs, and that
sufficient evidence was presented to uphold the decision of the hearing officer.  Id.
at 35.

In 2005, Defendant Rocha was the investigating officer and created the
preliminary investigation report for disciplinary case number 2006118639.  DX-F,
at 23-24.  Plaintiff was disciplined for being out of place and for falsely telling an
officer that he was a secured status inmate.  Id.  He claimed that he was helping a
secured status inmate clean.  Id.  Plaintiff did not file a grievance to challenge the
outcome of the disciplinary case, nor did he file any other grievances against
Defendant Rocha in 2005.

During the relevant time period in 2006, Defendant Rocha acted as an
investigating officer and prepared the preliminary investigation report in
disciplinary case numbers 20060133084, 20060132966, and 2006176051.  DX-F,
at 28, 28, 31.  In disciplinary case number 20060133084, plaintiff was disciplined
for failing to comply with TDCJ's grooming policy.  Id. at 25.  He did not dispute

34

the charge, but instead asserted that he did not have to shave.  Id. at 26.  In

disciplinary case number 20060132966, he was again disciplined for failing to

comply with the grooming policy.  Id. at 27.  He asserted that he did not have to

shave because of his religion.  Id. at 28.  In disciplinary case number 2006176051,

he was again disciplined for failing to comply with the grooming policy.  Id. at 30.

Defendant Rocha was never the charging officer in plaintiff's disciplinary cases.

On January 21, 2006, plaintiff filed a Step One grievance, which alleged that

Defendant Rocha made disparaging remarks about his race and religion after he

refused to shave and cited religious reasons for his refusal.  DX-G, at 57.  He also

claimed that Defendant Rocha told other officers to write disciplinary cases against

him.  Id. at 58.  No action was taken on his complaints.  Id. at 58, 60.

Plaintiff's allegations that Defendant Rocha instructed other officers to write

disciplinary cases against him are unsupported, as are his allegations that

Defendant Rocha made disparaging remarks.  Defendant Rocha was never the

charging officer in any of the disciplinary actions brought against plaintiff.

Plaintiff's conclusory allegations that Defendant Rocha retaliated against him

because of his religion are unsupported.  Furthermore, Defendant Rocha did not

violate any of his constitutional rights, as he did not have a right to grow a beard.

Plaintiff has alleged nothing more than his personal belief that he is the victim of

retaliation, which is insufficient to support his claim. <u>Johnson</u>, 110 F.3d at 310. The chronology of events also does not support an inference of retaliation by Defendant Rocha. <u>Woods</u>, 60 F.3d at 1166.

It is respectfully recommended that plaintiff's claim that Defendant Rocha retaliated against him should be dismissed with prejudice.

### 3.    Defendant Ramon.

At his <u>Spears</u> hearing, plaintiff testified that shortly after his arrival on the McConnell unit, he filed a grievance against Officer Ramon, and thereafter, she repeatedly filed false disciplinary cases against him and harassed him by stealing items from his cell and making derogatory comments about his ethnicity and religion.

Defendant Ramon was the charging officer in disciplinary case number 20060176051, in which plaintiff was disciplined for refusing to comply with grooming standards. DX-F, at 30. Plaintiff did not dispute that he had not complied with the policy, but instead argued that he did not have to shave because of his religious beliefs. <u>Id.</u> at 31.

On June 30, 2005, plaintiff filed a Step One grievance alleging that Defendant Ramon threatened him and took property from his locker. DX-G, at 40. Upon review, Warden Kennedy determined that there was no evidence to support

his allegations.  Id. at 41.  He appealed the denial of his Step One grievance, and his Step Two grievance was denied on September 21, 2005.  Id. at 43.

On January 8, 2006, plaintiff filed a Step One grievance alleging that Defendant Ramon intimidated another officer into filing a disciplinary case against him for falsely stating he was a secured status inmate.  DX-G, at 52.  The officers were found to be in accordance with TDCJ policy and no action was taken.  Id. at 53, 55.  According to the officers, Defendant Ramon told the charging officer that plaintiff was a secured status inmate.  Id. at 56.

The only action Defendant Ramon ever took against plaintiff was filing the disciplinary case for failure to comply with TDCJ's grooming standards, a charge that plaintiff did not and does not refute.  Plaintiff's allegations that Defendant Ramon repeatedly filed disciplinary cases against him and harassed him are unsupported.  There is not a chronology of events from which retaliation could be inferred, and plaintiff has presented only conclusory allegations of retaliation against him by Defendant Ramon.  Woods, 60 F.3d at 1166 (no "chronology of events" established); Johnson, 110 F.3d at 310.  He has not presented any evidence of Defendant Ramon's motivation for retaliation.

It is respectfully recommended that plaintiff's claim that Defendant Ramon retaliated against him be dismissed with prejudice.

**F.     Defendants Are Entitled to Qualified Immunity.**

Defendants also move for summary judgment on the grounds of qualified immunity.  A qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'"  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)).  If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established-that is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation to be confronted.'"  Id. at 624 (quoting Price, 256 F.3d at 369).  Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  When a plaintiff fails to state a constitutional violation, the Court need not examine whether the defendants' actions were reasonable.  See id. at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further

38

and qualified immunity is appropriate).

### 1.   Step 1: Constitutional Violation.

Plaintiff's claims that defendants have violated his First Amendment free exercise rights, Eighth Amendment right to be protected from retaliation, and the Equal Protection Clause of the Fourteenth Amendment are without merit.  He has also not shown that defendants' conduct violated RLUIPA.  He has not shown that defendants' conduct has violated any of his constitutional rights.  Accordingly, it is respectfully recommended that plaintiff fails to state a constitutional violation against defendants, and that they are entitled to qualified immunity.

### 2.   Step 2: Objective Reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

At the time this action was filed, plaintiff did not have a right to grow a quarter of an inch beard, or wear a kufi at non-designated times or places in light of his religious beliefs under clearly established law.  Indeed, the Fifth Circuit has upheld restrictions on beards and kufis in actions filed by Muslim inmates.  Green, 229 F.3d at 490-91; Muhammad, 966 F.2d at 902-03.  Therefore, defendants'

actions in prohibiting plaintiff from wearing a beard and a kufi were not unreasonable in light of clearly established law.  Accordingly, it is respectfully recommended that defendants are entitled to qualified immunity on plaintiff's claims of retaliation and restriction of religious rights.

## VI.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that defendants' motion for summary judgment be granted, (D.E. 34), and that plaintiff's claims be dismissed with prejudice.

Respectfully submitted this 26th day of June 2007.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).