IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| WILLIE LEE GARNER § | |
| § | |
| Plaintiff § | |
| § | |
| v. § | NO. CA-C-06-218 |
| § | |
| BRAD LIVINGSTON, RICK THALER, § | |
| ERNEST GUTIERREZ, JR., and § | |
| EILEEN KENNEDY § | |
| § | |
| Defendants § | |

**MEMORANDUM OPINION AND ORDER**

This is a civil action for declaratory and injunctive relief under the provisions of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-2(a). Due to the nature of the relief sought, the case was tried to the Court without the intervention of the jury. The Court's findings of fact and conclusions of law are incorporated in this Opinion.

The history of this case may be briefly summarized as follows: Plaintiff Willie Lee Garner is a state prisoner in the custody of the Texas Department of Criminal Justice. He is assigned to the McConnell Unit in Beeville, Texas. The Plaintiff, who identifies himself as a Muslim, contends that certain policies established by the Texas Department of Criminal Justice have denied him the right to practice his religious faith in two important areas. First, he contends that his Islamic faith requires him to wear a beard, but that TDCJ rules prohibit him from doing so. Second, he contends that his faith requires him to wear a white head covering known as a Kufi, but that he has been prohibited from wearing his Kufi to

and from religious services. In 2006, he filed a pro se complaint in this Court pursuant to 42 U.S.C. § 1983 and the RLUIPA. On September 12, 2007, the Honorable Janis Jack granted summary judgment in favor of the Defendants, and dismissed the Plaintiff's claims with prejudice. On appeal, the Court of Appeals affirmed the judgment with respect to Plaintiff's claims under § 1983, but reversed and remanded for trial Plaintiff's claims for declaratory and injunctive relief under the RLUIPA. **Garner v. Morales**, ____ F.3d ____ (5th Cir. 2009) (Cause No. 07-41015, decided March 6, 2009). Upon remand, counsel was appointed to represent the Plaintiff, and the case was reassigned to this Court for trial.

The Religious Land Use and Institutionalized Persons Act prohibits a state from imposing a substantial burden on a religious exercise of one of its prisoners unless the state is able to demonstrate that the imposition of that burden is in furtherance of a compelling governmental interest, and that it is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The Act also includes an express private cause of action to enforce its provisions. 42 U.S.C. § 2000cc-2(a).[1]

---

[1] The Supreme Court has recently pointed out that the RLUIPA is the second attempt by Congress to afford heightened protection to religious exercises. **Sossamon v. Texas**, ___ U.S. ___, 79 L.W. 4262 (2011). It succeeded the Religious Freedom Restoration Act of 1993, which was declared unconstitutional as applied to state and local governments. **See City of Boerne v. Flores**, 521 U.S. 507 (1997).

Under the RLUIPA, a "religious exercise" includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(a). In the instant case, it is undisputed that the wearing of a beard and the wearing of a Kufi as desired by Garner are religious exercises. Furthermore, the Defendants do not seriously challenge the contention that TDCJ policies impose a substantial burden on those religious exercises. Instead, the Defendants seek to demonstrate that the restrictive policies regarding beards and head coverings further compelling governmental interests, and are the least restrictive means of furthering those compelling governmental interests.

Garner contends that wearing a beard is a religious practice important to Muslim men, and the evidence supports a finding that his contention is "honest and accurate." **Adkins v. Kaspar**, 393 F.3d 559, 570 (5th Cir. 2004). However, TDCJ policy requires that all prisoners maintain a clean shave except those with an "objectively verifiable medical condition," who are allowed to maintain a quarter-inch beard.[2]

The exact origin of the "no beard" policy appears lost in the

---

[2] Garner acknowledges that the Quran prescribes a "fist-length" beard, which would be closer to four inches than a quarter inch. However, in this lawsuit he insists only on the right to maintain a quarter-inch beard, presumably seeking to harmonize his position with that of the prisoners exempted from the clean-shave rule by virtue of their medical condition.

mists of history. The longest serving TDCJ employees who testified (Rick Thaler and William Stephens) could only say that the rule existed when they first came to work in the early 1980s. Whatever reason may have led to the original adoption of the rule, the Defendants contend that its continued implementation furthers compelling government interests of identification, safety, and security.

It is undisputed that the State of Texas has compelling governmental interests in the safety and the reasonably economical operations of its prison system. **Sossaman v. Texas**, 560 F.3d 316, 334 (5th Cir. 2009), aff'd, ____ U.S. ____, 79 L.W. 4262 (2011). It is a requirement of the RLUIPA, however, that these interests be furthered by the least restrictive means available. The precise issue before the Court in the instant case is whether the Defendants have discharged their burden of showing that denying the request of a Muslim prisoner to wear a quarter-inch beard is the least restrictive means to further those interests.

The Defendants contend that their clean-shave policy is essential to the compelling interest of safety, in that (1) the identification of prisoners would be hindered by allowing beards to be worn, (2) a beard could be a hiding place for weapons or contraband, and (3) a prison escapee could change his appearance by shaving his beard, rendering recapture more difficult. They also express economy-related concerns, contending that additional

expense would be involved in (1) changing the photographs on prisoner identification cards, and (2) making barbers and/or clippers available to trim the beards of Muslim prisoners to the length of one-quarter inch.

Before discussing the precise issue of Plaintiff Garner's right to grow a beard as a manifestation of his Muslim religion, the Court acknowledges the lack of consensus among penologists as to whether allowing prisoners to grow beards has any significant relationship to the issue of safety. In fact, the evidence shows that more than 40 of the 50 state prison systems allow their inmates to grow beards. The Plaintiff's expert witness, George Earl Sullivan, a man with decades of practical experience in managing correctional institutions, testified that in his experience, institutions in which prisoners are allowed to grow beards are no less safe than those in which beards are prohibited.[3]

The Defendants have not sustained their burden of proving that their solution (prohibiting beards) is the least restrictive means of satisfying the compelling interests at stake. With respect to identification, for example, those prisoners who are allowed to maintain beards for medical reasons obviously are shown wearing

---

[3] The defense points out that Sullivan's experience was in states (Colorado, New Mexico, and Oregon) with prison populations much smaller than that of Texas, and therefore are not really comparable. However, the evidence also reveals that two prison systems which are comparable to Texas in size (the Federal Bureau of Prisons and the State of California) permit their prisoners to grow beards, and have done so for years.

beards in their identification photos. The Defendants suggest no reason why the same could not be done in the case of Muslim prisoners. Second, the claim that a quarter-inch beard would be a useful hiding place for weapons or contraband lacks credibility. Any form of weapon or contraband worth hiding could be better hidden elsewhere. Neither does the Court find persuasive the argument that an escaped prisoner with a beard could change his appearance more easily than a prisoner with no beard. Just as the bearded man can change his appearance by shaving, the beardless man can change his appearance by growing a beard.[4]

The Defendants also contend that allowing an exception to the no beard rule would have an economic impact. They are probably correct in assuming that if Plaintiff Garner were allowed to have a beard, other Muslim prisoners in the McConnell Unit would desire the same benefit. This could, and probably would, result in some additional expense to the TDCJ, but the evidence fails to demonstrate that it would be significant. The McConnell Unit already features barbering services for the benefit of those inmates who are allowed to maintain beards by virtue of a medical condition. These services might have to be expanded to accommodate Muslim prisoners, but the additional expense is unlikely to be

---

[4] In this connection, the Court notes that TDCJ rules do not prohibit prisoners from shaving their heads. If such a prisoner escapes, he could also change his appearance by either growing hair, or wearing a wig.

exorbitant.[5]  Some additional expense would also be incurred in taking new photographs for prisoner identification cards, but some of that expense is covered by fees paid by the prisoners themselves.  In short, the evidence as a whole fails to establish that the economic impact on the TDCJ would be significant.

The TDCJ's grooming policy does impose a substantial burden on an important aspect of the Plaintiff's exercise of his Muslim religion, and the Defendants have failed to sustain their burden of showing that the policy represents the least restrictive means of furthering a compelling government interest.  Therefore, the Plaintiff is entitled to judgment in his favor with respect to this issue.

It is undisputed that wearing the head covering known as the Kufi is also a religious practice which is important to the free exercise of the Plaintiff's Muslim religion.  It is also undisputed that TDCJ rules do not absolutely forbid the wearing of the Kufi. On the contrary, Plaintiff Garner and other Muslim prisoners are permitted to wear the Kufi in their own dormitory or cell, and in the location where religious services are being held.  The rule

---

[5] The record does not reflect how many prisoners in the McConnell Unit identify themselves as Muslims.  However, system-wide statistics offered by the Defendants through Chaplain Pierce indicate that prisoners who identify themselves as Muslim constitute less than five percent of the total prison population.

does forbid the prisoner from wearing his Kufi while in transit from one location to the other.

Unlike facial hair, the Kufi is easily capable of being donned in one location and doffed in another. In addition to removeability, the Kufi is distinguished from the quarter-inch beard in its potential for the concealment of a weapon or contraband. Given the State's compelling interest in the safety and security of prisoners and prison staff, requiring a Muslim prisoner to remove his Kufi and to make it available for inspection while on route to and from his religious service appears to qualify as the least restrictive way of furthering that compelling interest. Accordingly, the Plaintiff is not entitled to injunctive or declaratory relief with respect to the TDCJ rule regarding the wearing of the Kufi.

In summary, the Court finds that Plaintiff Garner is entitled to a declaratory judgment that the TDCJ grooming policy, insofar as it prohibits him from wearing a quarter-inch beard, imposes an impermissible burden on his religious exercise, and is not justified by a compelling governmental interest of the State of Texas. The Plaintiff is also entitled to an injunction, restraining and enjoining the Defendants from enforcing that policy in such a way as to impose a burden on his religious exercise in violation of 42 U.S.C. § 2000cc-1(a). In all other respects, the Plaintiff's request for declaratory and injunctive relief should be

denied.

IT IS THEREFORE ORDERED that the Plaintiff's request for declaratory and injunctive relief pursuant to the Religious Land Use and Institutionalized Persons Act be, and it is hereby, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that a declaratory judgment be, and it is hereby, ENTERED in favor of the Plaintiff, Willie Lee Garner, and that the policy of the Texas Department of Criminal Justice prohibiting the wearing of a quarter-inch beard as a religious exercise is unenforceable against Plaintiff Garner because of the protection afforded such religious exercise by the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc.

IT IS FURTHER ORDERED that Defendants Brad Livingston, Rick Thaler, Ernest Gutierrez, Jr., and Eileen Kennedy, their successors, and all persons acting in concert with them, be, and they are hereby, RESTRAINED and ENJOINED from enforcing the TDCJ grooming policy prohibiting Plaintiff Garner from wearing and maintaining a quarter-inch beard as a religious exercise.

IT IS FURTHER ORDERED that in all other respects, judgment be, and it is hereby, ENTERED in favor of the Defendants.

SIGNED AND ENTERED this 19th day of May, 2011.

HARRY LEE HUDSPETH
SENIOR UNITED STATES DISTRICT JUDGE